### JAMES P. MARSH CORPORATION v. UNITED STATES GAUGE CO.

No. 1664.

District Court, N. D. Illinois, E. D.

July 31, 1941.

Thiess, Olson & Mecklenburger, Geo. W. Hansen, and M. Hudson Rathburn, all of Chicago, Ill., for plaintiff.

Mann, Brown & Cox, of Chicago, Ill., and Strauch & Hoffman, of Washington, D. C., for defendant.

CAMPBELL, District Judge.

#### Findings of Fact

1. Plaintiff, James P. Marsh Corporation, is a corporation of the State of Illinois.

2. Defendant, United States Gauge Company, is a corporation of the State of Pennsylvania and is licensed as a foreign corporation to do business in the State of Illinois.

3. William Rapp, of 804 West Washington Boulevard, Chicago, Illinois, was, prior to the filing of the Complaint herein, designated by defendant as its regis-

tered agent in the State of Illinois in accordance with the applicable statutes under which defendant is licensed to do business.

4. Defendant maintains a regular and established place of business at 804 West Washington Boulevard, Chicago, Illinois, at which place defendant makes cash sales and deliveries of defendant's products from a stock maintained at that place.

5. Plaintiff and defendant are each engaged in the manufacture and sale of competing internal siphon steam pressure gauges of the Bourdon tube type.

6. The accused gauge of Plaintiff's Exhibit 5 was manufactured by defendant at defendant's factory located in Sellersville, Pennsylvania, and was sold by defendant to J. J. Babka of Chicago, Illinois, at defendant's place of business, 804 West Washington Boulevard, Chicago, Illinois, on an order entered April 19, 1940, and was delivered by defendant to the said J. J. Babka at that place on May 4, 1940.

7. Plaintiff is the owner of the Joyce patent No. 2,170,561 in suit and relies upon claims 4, 6, 8, 11, and 12 of the said patent in support of its charge of infringement by the defendant's accused gauge. Claims 1, 2, 3, 5, 7, 9, and 10 are not here in suit.

8. A Bourdon tube is a well known pressure-responsive device comprising a hollow tubular member which is longitudinally curved and closed at one end. When the tubular member is rigidly fixed at a point remote from the closed end and the interior of the tubular member subjected to either pressure or vacuum, the free end thereof is caused to move due to changes in the curvature of the portion of the tubular member between the fixed point and the closed end. The fixed point is the "end" of the Bourdon tube regardless of whether the tubular member from which the Bourdon tube is formed terminates at that point or extends beyond that point.

9. Bourdon tubes are generally formed of materials which will anneal and cause the Bourdon tubes to lose their accuracy if subjected to high temperatures over any extended period of time. In steam pressure gauges the Bourdon tube must be protected by a siphon or trap from direct contact with live or high temperature steam.

10. The Joyce patent in suit relates to internal siphon steam pressure gauges in which a siphon or trap for protecting the Bourdon tube is built into the gauge itself and is entirely contained within the gauge casing. The Joyce patent discloses a gauge construction comprising a post for supporting all of the operating mechanism of the gauge, the post having a longitudinal bore for connection to a source of pressure and a transverse passageway in nonintercepting relation to the bore for supporting a combined Bourdon tube and siphon tube or trap on the post. One end of the Bourdon tube is secured by solder in the transverse passageway and the other or free end is connected to the gauge mechanism which is also supported on the post. The fixed end of the Bourdon tube is placed in communication with the bore of the post through the siphon tube, one end of which is positioned in the transverse passageway by solder and the other end of which is positioned in the bore and secured to the gauge post at that point by solder. The siphon tube is curbed and is concentrically arranged outside of the Bourdon tube to form with the Bourdon tube a trap between the longitudinal bore and the free end of the Bourdon tube thus to protect the Bourdon tube from the excessive temperature of live steam. In the embodiment shown in the Joyce patent the Bourdon tube and the siphon tube are formed from separate pieces of tubing and, the respective ends of these pieces of tubing, which are positioned in the passageway in the post, are spaced apart, communication there-between being established through the passageway which is in the form of a tubular bore.

11. The passageway in the post of the Joyce patent establishes communication between the Bourdon tube and the siphon tube. Said passageway may assume any shape, size or length that will effect such communication.

12. The accused gauge embodies the same major elements combined in an equivalent manner to accomplish the same result as the preferred construction shown in the Joyce patent. The accused gauge differs in that two of the major elements (the Bourdon tube and siphon tube) are integrally formed from a single piece of tubing and are thus in communication with each other, both before and after being mounted on the gauge post. In the accused gauge the passageway through the post is in the form of an open groove or slot rather than a bore, and the continuous tube which forms the Bourdon tube

and the siphon tube is soldered to the gauge post at the opposite ends of the passageway, so that the portion of the tube which connects the portions forming the Bourdon tube and the siphon tube extends through the passageway.

13. The prior art patents relied upon by defendant disclose many different forms of internal siphon steam pressure gauges. None of these patents discloses the combination of elements shown in the Joyce patent and set forth in the Joyce claims in suit.

14. The accused gauge embodies the invention of the Joyce patent in suit rather than the teachings of any of the prior art patents.

15. The exact form of the Joyce invention disclosed in the Joyce patent was adopted commercially by plaintiff early in 1932, and by defendant in the latter part of 1932. Plaintiff has enjoyed marked commercial success in the sale of the Joyce internal siphon steam pressure gauge. The manufacture and sale by defendant of its Chinese copy of the Joyce preferred construction was continued by defendant for six years until the construction of the accused gauge was adopted shortly prior to issuance of the Joyce patent.

16. The Joyce patent is not a pioneer patent but it discloses a material and valuable step forward in the art.

17. Defendant, in its accused gauge, has appropriated the substance of the Joyce invention even though the accused gauge is not an exact and precise copy of the gauge disclosed in the drawing of the Joyce patent.

18. None of the Joyce patent claims in suit requires by its terms that the Bourdon tube and the siphon tube or trap be formed from separate pieces of tubing or that the passageway in the gauge post be of any particular form or shape, or that the Bourdon tube and the siphon tube be spaced apart and placed in communication solely by the passageway. Every element of each of the Joyce claims in suit is found in the accused gauge either in the same or in equivalent form.

19. The continuous integral tube which forms the Bourdon tube and the siphon tube or trap in the accused gauge is divided into two portions (a siphon tube portion and a Bourdon tube portion) by soldering the continuous tube to the gauge post at the opposite ends of the transverse groove or slot. The siphon tube portion is also supported on the post at its opposite end by positioning the end of the tube in the longitudinal bore and soldering the tube to the post at that point.

20. The transverse slot or groove in the gauge post of the accused gauge permits the portion of the continuous tube, which affords communication between the Bourdon tube portion and the siphon tube portion, to pass through the post and provides better support for the Bourdon tube portion and the siphon tube portion than would otherwise be obtained. This is a material advantage.

21. Original claim 17 of the application for the Joyce patent in suit, which claim successively became count 6 of the Hartley v. Joyce interference and the sole count of the Klein v. Rose interference; which claim was for a time reinserted in the Joyce application as claim 34; and which claim is now claim 2 of the Klein patent No. 2,186,872, was adjudged by the Patent Office Tribunals in the two interferences to be a specific claim limited to a construction in which the Bourdon tube and siphon tube are integrally formed from a continuous piece of tubing, and these same tribunals held that this specific claim was too narrow in scope to read on the disclosure of the Joyce application for the patent in suit.

22. The patentee Joyce, by acquiescing in the Patent Office rulings with respect to this narrow claim and by cancelling this narrow claim from the application for the patent in suit, did not relinquish any right to broad generic claims dominating the subject matter of this narrow claim.

23. Claims 35 and 36 of the application for the Joyce patent in suit, which claims were rejected by the Patent Office and subsequently cancelled from the Joyce application, were broader than any of the Joyce claims in suit in that they did not call for a passageway in the post or specify the manner in which the Bourdon tube and siphon tube are associated with the post. It is not necessary to interpret patent claims 4, 6, 8, 11 and 12 of the Joyce patent as equivalent in scope to cancelled claims 35 and 36 in order to read these patent claims on the accused gauge.

24. There is nothing in the file wrapper of the application for the Joyce patent in suit to indicate that Joyce or the Patent Office intended to limit the Joyce patent to the embodiment shown in the Joyce patent drawing. On the contrary, there

is clear and convincing evidence in this file wrapper that Joyce and the Patent Office intended and understood that claims 4, 6, 8, 11, and 12 of the Joyce patent are generic in scope and broader than the remaining claims granted to Joyce.

25. Harold L. Joyce, patentee of the patent in suit, was the original, first and sole inventor of the improvements defined in claims 4, 6, 8, 11, and 12 of the Joyce patent No. 2,170,561.

26. Defendant has infringed claims 4, 6, 8, 11, and 12 of the Joyce patent No. 2,170,561 in suit by the manufacture and sale of the internal siphon steam pressure gauges of the character exemplified by Plaintiff's Exhibit 5.

### Conclusions of Law

1. The Court has jurisdiction of the parties and of the cause of action alleged in the complaint.

2. Claims 4, 6, 8, 11, and 12 of the Joyce patent No. 2,170,561 are good and valid in law.

3. Defendant has infringed claims 4, 6, 8, 11, and 12 of the Joyce patent No. 2,170,561.

4. Plaintiff is not estopped to contend that the accused gauge of Plaintiff's Exhibit 5 is an infringement of the Joyce patent No. 2,170,561.

5. Plaintiff is entitled to a permanent injunction against further infringement of the Joyce patent No. 2,170,561 and to a decree for an accounting of profits and damages by reason of defendant's infringement, and for costs.